Erin Rose Ronstadt, SBN 028362
Kyle James Shelton, SBN 027379
SANDSTONE LAW GROUP
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@sandstonelawgroup.com
kyle@sandstonelawgroup.com

*Attorneys for Plaintiff*

**SANDSTONE LAW GROUP**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Carla Stapleton,<br><br>Plaintiff,<br><br>v.<br><br>The Lincoln National Life Insurance Company, plan insurer and fiduciary,<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

For her claims against The Lincoln National Life Insurance Company ("Lincoln"), Plaintiff Carla Stapleton ("Ms. Stapleton" or "Plaintiff") alleges as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. At all relevant times, Ms. Stapleton was employed by Centene Management Company ("Centene") and was a participant in the Centene Corporation Welfare Benefit Plan (the "Plan"), an employee welfare benefit plan within the meaning of ERISA.

3. Lincoln is the insurer of the Plan's long-term disability ("LTD"), Group Policy No. GF3-840-445197-01, and life waiver of premium ("WOP") benefits pursuant to Group Policy No. SA3-840-445197-01 (collectively the "Policy").

4. Ms. Stapleton is a citizen and resident of Maricopa County, Arizona and is a citizen of the United States of America.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

5. Lincoln is a Pennsylvania corporation with its principal place of business in Pennsylvania and is licensed to do business in Arizona.

6. Lincoln is also the claims administrator for the Plan and is a fiduciary under ERISA. Lincoln makes final decisions regarding payment of LTD and WOP benefits under the Plan.

7. Lincoln has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

8. Lincoln is licensed and authorized to do business in Maricopa County, Arizona.

9. Lincoln resides and is found in Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1391.

10. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

11. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### ***Ms. Stapleton's Disability***

12. Ms. Stapleton worked for Centene Management Company as a Nurse Consultant until she became unable to perform her occupation due to disability.

13. Ms. Stapleton's former occupation of Nurse Consultant is considered a sedentary exertional level, requiring sustained sitting, concentration, and the ability to meet deadlines and handle complex medical review tasks.

14. Ms. Stapleton suffers from multiple medical conditions, including triple-negative breast cancer (status post bilateral mastectomy with reconstruction, chemotherapy, and radiation), complications from her cancer treatment (pain, contractures, scarring, and recurrent chest wall nodules), degenerative disc disease of the lumbar spine with nerve

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

impingement, osteoporosis, chronic pain, fatigue, and documented functional limitations precluding any work.

15. Ms. Stapleton underwent a bilateral mastectomy with reconstruction on December 14, 2021, followed by chemotherapy, radiation, and multiple additional procedures related to her cancer and treatment complications.

16. Ms. Stapleton attempted to return to her normal daily functioning, but cancer-related complications, persistent chest wall pain and nodules, spinal disease with nerve compression, fatigue, gait and balance impairments, and limited positional tolerances prevented her from performing her job or any job on a consistent basis.

17. Ms. Stapleton remained disabled despite treatment and was forced to stop working.

18. Ms. Stapleton exhausted her short-term disability benefits and Lincoln began evaluating her claim for LTD and WOP benefits in 2022.

19. Ms. Stapleton had a date of disability of December 14, 2021.

20. Collectively, Ms. Stapleton's medical conditions prevent her from performing the material duties of her Own Occupation or Any Occupation under the Policy.

21. Ms. Stapleton is under the regular care of multiple physicians, including oncologists, surgeons, pain specialists, and physical therapists.

22. Ms. Stapleton became Disabled while insured under the Policy.

23. Throughout the history of her claim, Ms. Stapleton has repeatedly submitted proof of loss corroborating her Disability at Lincoln's behest.

24. To be eligible for LTD benefits, Ms. Stapleton must meet the definition of "Disabled" and "Disability" as they are defined in the Policy.

25. Under the Policy, "Disabled" means:

i. That during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Material Acts necessary to pursue her Own Occupation in the usual and customary way; and

ii. Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which she could reasonably be expected to perform satisfactorily in light of her age, education, training, experience, station in life, and physical and mental capacity.

26. The Policy defines "Substantial and Material Acts" as acts that are normally required for the performance of the Covered Person's Own Occupation and that cannot be reasonably omitted or modified.

27. Under the Policy, a participant may qualify for WOP if she is Disabled. Lincoln applied a similar Any Occupation disability standard to evaluate Ms. Stapleton's WOP claim as it did for LTD.

28. The WOP definition of Total Disability is defined as "the inability, as a result of Injury or Sickness, to perform the Material and Substantial Duties of Any Occupation." "Material and Substantial Duties" means responsibilities that are normally required to perform Any Occupation, and cannot be reasonably eliminated or modified. "Any Occupation" for WOP means "any occupation that the Covered Employee is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

29. On July 13, 2022, Lincoln approved Ms. Stapleton's WOP claim "as Total Disability from Any Occ is supported at this time."

30. Ms. Stapleton's WOP claim was reviewed by Lincoln approximately every three months and approved until June 11, 2024.

31. On June 14, 2024, when Ms. Stapleton's claim transitioned from the Own Occupation to the Any Occupation definition, Lincoln denied her continued LTD benefits

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

and simultaneously denied her WOP claim, asserting that she was not Disabled from Any Occupation.

32. Unlike the LTD definition of disability, the WOP provision contains no continuity requirement. And, Lincoln was obligated to reevaluate Plaintiff's condition every three months and pay benefits only if she continued to meet the strict Any Occupation definition.

33. Accordingly, each time Lincoln approved WOP during the two-year period, it made an independent finding that Plaintiff remained unable to perform the Material and Substantial Duties of Any Occupation.

34. These repeated determinations under the heightened WOP standard underscore the arbitrariness of Lincoln's later decision to deny LTD benefits at the test change, where the LTD definition had merely shifted to the same Any Occupation standard Lincoln had already been applying and paying under for years.

35. Lincoln did not identify or rely on any evidence of medical improvement, vocational change, or increased work capacity to justify reversing its prior findings.

36. Lincoln's repeated approvals under the stricter WOP definition are direct evidence that Plaintiff met, and continued to meet, the Any Occupation standard.

37. Ms. Stapleton has, at all times since the date her Disability began, been eligible for LTD and WOP benefits due to her inability to perform the duties of her Own Occupation or Any Occupation.

***Lincoln's Denial***

38. On June 14, 2024, Ms. Stapleton experienced the Policy's "test change," where the definition of Disability for LTD benefits shifted from the "Own Occupation" standard to the "Any Occupation" standard.

39. On or about June 12, 2024, Lincoln issued a letter closing Ms. Stapleton's LTD claim effective June 13, 2024, asserting she did not meet the "Any Occupation" definition of

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Disability. Lincoln also denied her claim for WOP benefits under the Policy and Plan (collectively the "Denial").

40. Lincoln's stated reasons for denial were that:

i. She had completed treatment for breast cancer and was in remission;

ii. There was "no evidence" of functional impairment from an oncology standpoint after September 2022;

iii. Her medical records did not support restrictions or limitations that would preclude "Any Occupation" employment.

41. Lincoln relied heavily on a file review by oncologist Lee Hartner, M.D., who opined there was "no support" for restrictions or limitations from May 2023 onward, despite Ms. Stapleton's ongoing pain, fatigue, degenerative spine disease, and other complications.

42. In reaching its Denial, Lincoln failed to adequately consider the combined impact of Ms. Stapleton's breast cancer sequelae, recurrent chest wall nodules, lumbar degenerative disc disease with nerve impingement, fatigue, and chronic pain, all of which prevented her from performing any occupation with reasonable continuity.

### *SSDI Findings and Lincoln's Overpayment*

43. Ms. Stapleton was granted Social Security Disability Insurance ("SSDI") benefits on April 15, 2024, due to the disabling effects of her triple-negative breast cancer and its complications.

44. As part of Ms. Stapleton's SSDI proceedings, she attended a hearing before Administrative Law Judge ("ALJ") Dawn Gruenberg on March 8, 2024. On April 15, 2024, Judge Gruenberg issued a Fully Favorable Decision, finding that Ms. Stapleton was unable to perform her past relevant work as a Nurse Consultant—a sedentary occupation—and that her acquired skills did not transfer to any other work existing in the national economy.

45. The ALJ specifically found that the attendance demands of Ms. Stapleton's prior work exceeded her residual functional capacity and that her combined impairments

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

would prevent her from sustaining competitive employment on a regular and continuing basis, defined as 8 hours a day, 5 days a week, or the equivalent schedule.

46. The SSDI decision is consistent with the objective medical evidence, including Ms. Stapleton's documented treatment history, recurrent breast wall lesions, degenerative disc disease with nerve impingement, fatigue, pain, and the February 25, 2025 Functional Capacity Evaluation confirming her inability to maintain any gainful work activity.

47. Despite being fully aware of the favorable SSDI decision—Lincoln even referred Ms. Stapleton to its vendor, Genex, to assist with her SSDI application—Lincoln never requested the full SSDI file, never meaningfully considered the ALJ's findings, and instead focused solely on recovering an alleged $60,940.03 overpayment from her SSDI back benefits.

48. On May 9, 2024, Lincoln demanded repayment of the SSDI overpayment, which Ms. Stapleton paid in full on May 31, 2024.

49. Less than two weeks later, on June 8, 2024, Lincoln terminated her LTD benefits, dismissing the SSDI decision with a boilerplate statement that the Social Security standards differ from those under the Policy, without grappling with the underlying evidence as required by ERISA.

50. Lincoln's disregard of the SSA's detailed findings is particularly egregious given that the Policy's "Any Occupation" definition of Disability mirrors the SSA's statutory definition of disability.

51. The failure to meaningfully address the SSDI decision violated 29 C.F.R. § 2560.503-1(g)(1)(vii)(A)(iii), which requires an insurer to explain its basis for disagreeing with a Social Security Administration disability determination.

52. Lincoln's summary dismissal of the SSDI award, despite benefitting financially from it, demonstrates its structural conflict of interest and further deprived Ms. Stapleton of the "full and fair review" guaranteed by ERISA.

***Ms. Stapleton's LTD Appeal and Lincoln's Adverse Evidence***

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

53. Ms. Stapleton timely appealed the Denial (the "Appeal") on December 5, 2024. The Appeal included but was not limited to updated medical records from her oncology, surgical, and pain providers; her Social Security Disability file showing a Fully Favorable Decision with a December 14, 2021 date of disability; and her own sworn declaration.

54. In addition, the Appeal contained a detailed medical chronology documenting Ms. Stapleton's breast cancer history, surgeries, radiation, chemotherapy, recurrent chest wall nodules, degenerative disc disease with nerve impingement, chronic pain, fatigue, and complications from treatment.

55. Ms. Stapleton appealed both the LTD and WOP denials.

56. Since the Denial, Ms. Stapleton's condition further declined, and she underwent additional treatment, including pain management and physical therapy, which reinforced her inability to perform the material duties of her Own Occupation or Any Occupation.

57. The additional medical evidence provided with the Appeal further substantiated Ms. Stapleton's Disability under the Plan.

58. Plaintiff also submitted supplemental evidence, which largely included the full SSA file that Lincoln failed to secure in bad faith.

59. On January 16, 2025, Lincoln referred Ms. Stapleton's file for review by Frederic Schwartz, M.D., who opined that she had "no supported impairment" from June 13, 2024 through October 6, 2024, and only minimal restrictions thereafter based on lumbar degenerative disc disease.

60. Dr. Schwartz acknowledged an October 14, 2024 MRI showing multi-level degenerative disc disease with mass effect on the L3 nerve root, but minimized its significance, concluding Ms. Stapleton was capable of sustained full-time work with only occasional restrictions on lifting and walking.

61. On February 25, 2025, Ms. Stapleton underwent a Functional Capacity Evaluation (FCE), which objectively documented severe impairments in sitting, standing,

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

walking, bending, balance, and gait, confirming that she could not sustain full-time competitive employment. The FCE passed all validity measures, and the evaluator found Ms. Stapleton credible.

62. On March 7, 2025, Ms. Stapleton submitted the FCE and additional medical records in response to Dr. Schwartz's review, disputing his conclusions and highlighting the consistency of her symptoms with objective findings.

63. Lincoln forwarded this evidence back to Dr. Schwartz, who issued an addendum report on March 24, 2025. In his addendum, Dr. Schwartz dismissed the FCE as "invalid" on the fabricated ground that such testing is only valid when a claimant is "motivated to return to work".

64. On April 9, 2025, the FCE evaluator submitted a rebuttal to Dr. Schwartz's addendum, confirming the FCE results were valid and reliable and explaining that Ms. Stapleton gave full effort, demonstrated consistency, and was severely impaired.

65. On April 22, 2025, Lincoln issued its final denial (the "Final Denial"), upholding its termination of benefits and adopting Dr. Schwartz's flawed opinions while disregarding the objective findings of the FCE and the Social Security Administration's fully favorable decision.

66. In reaching the Final Denial, Lincoln relied solely on biased and inadequate file reviews by Dr. Schwartz and previously Dr. Hartner, neither of whom examined or spoke with Ms. Stapleton or her treating providers.

67. Lincoln failed to meaningfully address Ms. Stapleton's rebuttal evidence, including the FCE, instead summarily dismissing them without explanation.

68. Lincoln also failed to explain why the restrictions Dr. Schwartz conceded (occasional lifting, standing, and walking) would not preclude her from performing even sedentary or light work, which typically requires more frequent positional tolerance.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

69. Plaintiff was not given an opportunity to respond to Dr. Schwartz's final addendum before Lincoln issued its Final Denial, depriving her of a "full and fair review" under ERISA.

70. Lincoln's reliance on its peer reviewers, coupled with its disregard of objective evidence and treating provider findings, was an abuse of discretion and contrary to its fiduciary duty under ERISA.

71. In its Final Denial, Lincoln failed to properly consider Ms. Stapleton's treating provider conclusions, restrictions, and limitations.

72. In its Final Denial, Lincoln failed to properly consider Ms. Stapleton's Social Security file, instead reciting boilerplate language that the SSDI standards differ from those under the Policy.

73. Ms. Stapleton is unable to perform the material duties of her Own Occupation, or Any Occupation for that matter, and therefore comes within the definition of Disability under the Plan.

74. Despite Ms. Stapleton's submission of extensive medical records and objective testing, Lincoln obtained biased file reviews from physicians such as Dr. Lee Hartner and Dr. Frederic Schwartz, who ignored or mischaracterized critical medical evidence, including her ongoing breast cancer complications, her lumbar degenerative disc disease, and her Functional Capacity Evaluation.

75. For example, Dr. Schwartz dismissed the February 25, 2025 Functional Capacity Evaluation, claiming FCEs are only valid if a claimant is "motivated to work," a fabricated and medically unsupported assertion.

76. Neither Dr. Hartner nor Dr. Schwartz ever evaluated Ms. Stapleton in person.

77. Lincoln failed to adequately assess the combined impact of Ms. Stapleton's cancer-related impairments, chronic pain, spinal disease, and fatigue, simply asserting she had "no impairment" during certain periods.

78. The failure to consider the totality of Ms. Stapleton's impairments is particularly egregious given her objective MRI findings, documented breast wall lesions, ongoing oncology concerns, and a valid FCE confirming severe work-preclusive limitations.

79. The Denial and Final Denial relied solely upon biased and inadequate file reviews, which provided cursory restrictions and limitations but disregarded the objective functional evidence and the conclusions of treating providers.

80. Lincoln violated ERISA and the Policy by failing to consider Ms. Stapleton as a whole person, including the combined effects of her physical impairments, functional limitations, and vocational restrictions, as required by the LTD Policy.

81. Ms. Stapleton exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD and WOP Plan Benefits)**
**(Defendant Lincoln)**

82. All other paragraphs are incorporated by reference.

83. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

84. The Plan is governed by ERISA and, to the extent not preempted by federal law, is subject to the laws of the State of Missouri, which is the governing jurisdiction under the Policy.

85. The Plan and Policy do not confer discretion to Lincoln.

86. The Plan represents LTD and WOP coverage and a promise to provide these benefits until Ms. Stapleton is no longer Disabled under the terms of the Plan.

87. Ms. Stapleton is Disabled from her Own Occupation.

88. Ms. Stapleton is Disabled from Any Occupation.

89. Ms. Stapleton has claimed the benefits under the Plan to which she is entitled.

90. Defendant Lincoln wrongfully denied those benefits.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

91. Ms. Stapleton reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that she would receive benefits under the Plan until she reached her Social Security Normal Retirement Age, or until she was no longer Disabled.

92. Lincoln's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

93. The standard of review applicable to this Court's decision concerning Plaintiff's entitlement to LTD and WOP benefits is de novo. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

94. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Stapleton is informed and believes that Lincoln makes claims decisions based on the claims resources and financial risk it faces on certain claims.

95. Lincoln abused its discretion and acted in its own best financial interests, depriving Ms. Stapleton of a full and fair review in violation of 29 C.F.R. § 2560.503-1.

96. Lincoln did not properly consider all of the available evidence when terminating Ms. Stapleton's benefits.

97. In reaching its Denial and Final Denial, Lincoln failed to properly consider Ms. Stapleton's medical evidence, valid symptomology, and treating provider assessments.

98. Defendant initially determined that Plaintiff was entitled to the WOP benefit under the Plan. But in order to approve that benefit, Lincoln necessarily found that Plaintiff was "disabled" within the meaning of the Policy's Any Occupation definition.

99. By approving WOP under the "Any Occupation" definition, Lincoln conceded that Plaintiff's medical and vocational evidence demonstrated she was unable to perform the material duties of any occupation for which she was reasonably fitted by training, education, experience, age, physical and mental capacity.

100. Lincoln maintained this approval for a period of nearly two years on a quarterly basis, thereby acknowledging Plaintiff's continuing disability from any occupation.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

101. Despite this, when Lincoln conducted a "test change" review on LTD, it abruptly reversed its prior position and denied both Plaintiff's LTD and WOP claims, asserting she no longer met the definition of disability under either Policy definition.

102. This reversal was inherently inconsistent and arbitrary, because Lincoln had already determined Plaintiff satisfied the "Any Occupation" definition of disability, and Lincoln failed to identify any material improvement in Plaintiff's medical condition or vocational capacity that would justify terminating benefits.

103. By first approving WOP under the "Any Occupation" definition and then denying both LTD and WOP without new medical or vocational evidence of improvement, Lincoln acted in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), and its fiduciary duties of consistency, reasonableness, and fair review.

104. Lincoln's conduct demonstrates a failure to apply the Plan terms consistently and fairly.

105. Lincoln exclusively relied on medical file reviews provided by consultants and non-examining physicians.

106. Lincoln disregarded the opinions of its own medical reviewers and evaluators that supported disability, such as Ms. Stapleton's FCE, without valid reason.

107. On information and belief, Lincoln used consultants from third-party vendors in evaluating Ms. Stapleton's claim because it knew that their recommendations would be unfavorable for the approval of her benefits.

108. Lincoln based its decisions on unreliable and inaccurate information. When confronted with this knowledge, Lincoln continued to rely on these peer reviewers despite their obvious bias and mistakes.

109. On information and belief, Lincoln provides its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

110. Lincoln routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

111. Lincoln's biased medical consultant mischaracterized evidence to support the conclusion that Ms. Stapleton could work, including dismissing her valid FCE results on fabricated grounds.

112. Lincoln failed to properly consider the opinions of Ms. Stapleton's treating providers and objective testing.

113. Lincoln has a history of parsimonious claims handling.

114. Lincoln's ERISA violations were more than de minimis.

115. Lincoln failed to engage in a "meaningful dialogue" regarding Ms. Stapleton's claim, including refusing to address her responses to adverse evidence.

116. Lincoln engaged in procedural irregularities to serve its own financial best interests.

117. On information and belief, Lincoln's motivation in terminating Ms. Stapleton's LTD and WOP benefits was to eliminate a long-term financial liability.

118. Plaintiff is informed and believes that Lincoln continues to experience financial issues as a company, including shortages in its reserves for the payment of claims.

119. Plaintiff is informed and believes that, as a company, Lincoln has increased its efforts to deny otherwise valid claims as a result of its financial considerations.

120. Plaintiff is informed and believes that Lincoln did not set aside adequate reserves to pay Ms. Stapleton's claim.

121. Plaintiff is informed and believes that, upon denying the LTD and WOP claims, Lincoln released reserves for both claims.

122. On information and belief, Ms. Stapleton was a victim of Lincoln's corporate efforts to drive profitability.

123. Under the de novo standard of review, to be entitled to benefits, Ms. Stapleton need only prove by a preponderance of the evidence that she is Disabled.

**SANDSTONE LAW GROUP**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

124. Even under the abuse of discretion standard of review (which does not apply here), Lincoln abused its discretion, because its decision terminating Ms. Stapleton's disability benefits was arbitrary and capricious and unduly influenced by Lincoln's financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

125. Under the de novo standard of review, Ms. Stapleton is entitled to discovery regarding, among other things, the credibility of Lincoln's medical reviews and Lincoln's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007).

126. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Stapleton is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

127. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Ms. Stapleton is entitled to recover WOP benefits under the Policy and to enforce her rights to continued life insurance coverage.

128. Ms. Stapleton is entitled to reinstatement of her life insurance coverage and all other rights and privileges associated with the WOP benefit.

129. Ms. Stapleton is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the status quo ante before LTD benefits were wrongfully terminated.

130. Ms. Stapleton is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

131. Pursuant to 29 U.S.C. § 1132(g), Ms. Stapleton is entitled to recover her attorneys' fees and costs incurred herein.

WHEREFORE, on all claims, Ms. Stapleton asks for entry of judgment against Defendant as set forth in this Complaint, which includes:

A. All past and future LTD and WOP benefits under the terms of the Plan;

B. Clarifying and determining Ms. Stapleton's rights to future benefits under the terms of the Plan;

C. For any other benefits Ms. Stapleton may be entitled to receive under the Plan due to her disability;

D. All other equitable relief that is proper as a result of Lincoln's breaches of fiduciary duties;

E. For an award of Ms. Stapleton's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 12-351;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

Dated: September 24, 2025.

SANDSTONE LAW GROUP, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Kyle James Shelton
*Counsel for Plaintiff*

**SANDSTONE LAW GROUP**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050